# In the United States Court of Federal Claims

No. 13-365C
(Filed: June 3, 2015)

|  |  |  |
|---|---|---|
| UNITED STATES ENRICHMENT CORPORATION, | ) ) ) | Motion to Dismiss for Lack of Subject Matter Jurisdiction; Contracts Dispute |
| Plaintiff, | ) ) ) ) | Act; Presenting Claim to Contracting Officer; Final Indirect Rates; Provisional Rates; Department of |
| v. | ) ) | Energy |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

    *Thomas A. Lemmer*, Denver, CO, for plaintiff.

    *James P. Connor*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, and *Bryant E. Snee*, Acting Director, for defendant.

## OPINION ON PARTIAL MOTION TO DISMISS

**FIRESTONE**, *Judge*.

    Pending before the court is the partial motion to dismiss of defendant United States on behalf of the Department of Energy ("DOE" or "government") pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). The government asks this court to dismiss Counts II, IV, and VI of the amended complaint filed by plaintiff, United States Enrichment Corporation ("USEC"). Counts II, IV, and VI of USEC's amended complaint challenge the final indirect cost rates the government adopted in 2013 for work performed by USEC at DOE's gaseous-diffusion plants in Portsmouth, Ohio and Paducah, Kentucky from 2003 through 2005.

At issue in this motion is whether the certified claim USEC submitted on December 2, 2011 satisfies the claim requirement for jurisdiction under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7104, and 28 U.S.C. § 1491(a)(2). The certified claim demanded payment of $11,217,504 from DOE based on USEC's proposed final indirect rates for 2003 through 2005. The government argues that this court must dismiss the counts in USEC's amended complaint challenging the final indirect rates for 2003 through 2005 on the grounds that USEC's 2011 claim before the Contracting Officer ("CO") pre-dated DOE's final indirect rate determination and thus cannot satisfy the CDA's pre-filing claim requirements. USEC argues in response that its 2011 certified claim and the amended complaint demanded that the DOE adopt the same final indirect costs rates on the same basis. Therefore, USEC argues that filing a second claim for the same final indirect rates is unnecessary to establish jurisdiction.

For the reasons set forth below, the court agrees with USEC that its certified claim satisfies the jurisdictional prerequisites for filing a CDA claim in this court. Therefore, the government's partial motion to dismiss is **DENIED.**

I.      **BACKGROUND**

Pursuant to § 52.216-7 of the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 52.216-7, and USEC's contracts with DOE, USEC is entitled to recover its allowable indirect costs (e.g., overhead and general administrative costs) that are allocable to the contract. Each year, USEC and the government must agree to provisional billing rates, intended to approximate USEC's actual anticipated indirect costs, which USEC uses to bill the government as work progresses. Id. at § 52.216-7(e)(1). After the fiscal year is

over, USEC is required to submit an Incurred Cost Submission ("ICS") containing its actual indirect costs so that final rates can be determined.  If the actual rates exceed the amount the government paid USEC under the provisional billing rates, DOE is required to pay USEC the difference.  Id. at § 52.216-7(h)(1).

USEC submitted its ICS for FYs 2003, 2004, and 2005 on December 29, 2006, June 29, 2007, and December 28, 2007, respectively.  These submissions identified what USEC considered to be the correct final indirect rates to which USEC believed it was entitled.  The rates for each year exceeded the provisional billing rates for those years.  However, no final rates were set at that time.  On July 22, 2011, USEC submitted invoices to DOE for the difference between amounts paid to USEC for FYs 2003 through 2009 based upon provisional billing rates and the amounts due to USEC based upon the application of the final rates in USEC's ICS for FYs 2003 through 2009.  On December 2, 2011, USEC submitted a certified claim to the CO demanding payment of breach of contract damages of $11,217,504 that USEC believed was owed to it for its indirect costs for FYs 2003 through 2009.  On June 1, 2012, DOE denied the claim.

USEC filed its initial complaint in this court on May 30, 2013.  Counts II, IV, and VI of the complaint alleged "Failure to Establish Final Indirect Cost Rates for FY" 2003, 2004, and 2005, respectively.  Compl. ¶¶ 123, 158, 189.  In December of 2013, the DOE set the final indirect rates for FY 2003, 2004, and 2005.  However, the final rates that DOE established were lower than the rates USEC identified in its ICS for each year.  The final rates set by DOE were higher than the provisional rates that USEC had already been paid, but still lower than the rates that USEC had proposed in its ICSs.  Consequently, on

August 8, 2014, USEC amended its complaint and changed the headings for Counts II, IV, and VI to "Failure to Establish <u>Proper</u> Final Indirect Cost Rates for FY" 2003, 2004, and 2005, respectively.  Am. Compl. ¶¶ 109, 125, 140 (emphasis added).

The government filed a partial motion to dismiss Counts II, IV, and VI on October 13, 2014.  Oral argument was held on February 26, 2015.  During the oral argument, the court requested further briefing from the parties.  Supplemental briefing was completed on April 1, 2015.

## II.   STANDARD OF REVIEW

The standard of review for a motion to dismiss for lack of subject-matter jurisdiction is well established in this court.  The court must have subject matter jurisdiction before proceeding on the merits.  <u>Aerolineas Argentinas v. United States</u>, 77 F.3d 1564, 1572 (Fed. Cir. 1996).  If the Court determines that it does not have subject-matter jurisdiction over the claim, the action must be dismissed without prejudice. <u>Wheeler v. United States</u>, 11 F.3d 156, 160 (Fed. Cir. 1993).  The non-movant bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence.  <u>K-Con Bldg. Sys., Inc. v. United States</u>, 778 F.3d 1000, 1004 (Fed. Cir. 2015) (quoting <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (1988)).  "When reviewing a motion to dismiss for lack of subject matter jurisdiction, a court accepts only uncontroverted factual allegations as true for purposes of the motion."  <u>Banks v. United States</u>, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing <u>Gibbs v. Buck</u>, 307 U.S. 66, 72, (1939).  Further, "disputed facts outside the pleadings are subject to the fact finding of the court." <u>Engage Learning, Inc. v. Salazar</u>, 660 F.3d 1346, 1355 (Fed. Cir. 2011).

## III.    DISCUSSION

The sole issue before the court is whether USEC's December 2011 claim challenging DOE's failure to pay USEC the indirect rate USEC had proposed and seeking $11,217,504 satisfies the claim requirement for a challenge to the final indirect cost rates set by DOE in 2013.  The CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . be submitted to the [CO] for a decision."  41 U.S.C. § 7103(a)(1).  This rule exists in order "to create opportunities for informal dispute resolution at the [CO] level and to provide contractors with clear notice as to the government's position regarding contract claims."  Applied Companies v. United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998) (citing S. Rep. No. 95-1118, at 1 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5235).  A claim is defined as  "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain . . . ."  48 C.F.R. § 52.233-1(c).  A claim need not be submitted in any particular form, but must provide "a clear and unequivocal statement that gives the [CO] adequate notice of the basis and amount of the claim."  K-Con, 778 F.3d at 1005 (quoting Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987)).  Thus, before the court can assume jurisdiction over the claim, the court must ensure that the contractor submitted a claim to the CO including the amount sought and an adequate explanation of the basis for the request.  K-Con, 778 F.3d at 1005.[1]

---

[1] The court must also ensure that the lawsuit is timely, meaning that the CO is given the opportunity to act on the claim.  Affiliated Constr. Grp., Inc. v. United States, 115 Fed. Cl. 607, 612 (2014).  Once a claim is submitted to the CO, a contractor must wait for a final decision denying the claim before the contractor may file an appeal before the appropriate board of contract appeals or in this court.  A claim is deemed denied if the contractor does not receive a

Because litigant must exhaust this process for each claim before filing a suit in this court, it is important to determine whether the claim before the court is the same claim as was presented to the CO.  Id.  In order to determine whether the claim submitted to the CO pursuant to the CDA is adequate to confer jurisdiction over the corresponding count in the plaintiff's complaint, the court is to consider whether the CDA claim and the count before the court "either request different remedies (whether monetary or non-monetary) or assert grounds that are materially different from each other factually or legally."  Id. (emphasis in original) (citing Contract Cleaning, 811 F.2d at 592).

However, the circuit explained that courts must apply these rules in a "practical way."  K-Con, 778 F.3d at 1005.  The purpose of the claim requirement is to give "the [CO] an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request," id., before a plaintiff can bring a suit in this court.  Consequently, the rule that a complaint may not seek a different remedy or be based on a different factual or legal predicate should not be imposed in such a way to preclude all adjustments of plaintiff's claim "'based upon matters developed in litigation.'"  Id.  (quoting Tecom, Inc. v. United States, 732 F.2d 935, 937-38 (Fed. Cir. 1984)).  The K-Con court also noted that "merely adding factual details or legal argumentation does not create a different claim."  K-Con, 778 F.3d at 1006.

---

response within 60 days, unless the CO notifies the contractor of the time within which a decision will be issued.  41 U.S.C. § 7103(f)(1), (2), (5); 41 U.S.C. § 7104.  Here, there is no dispute that USEC waited the requisite amount of time before filing in this court.

The government argues that USEC's present challenge to the final rates must be dismissed because USEC never submitted a challenge to the final rates that the DOE set in 2013. According to the government, because final indirect rates had not been set until 2013, USEC's 2011 claim cannot serve as a jurisdictional predicate for the amended complaint's challenge to final indirect rates. The government argues that, once DOE set the final indirect cost rates in 2013, USEC was required to present its challenges to DOE's final rates to the CO through submission of a new certified claim.

USEC counters that this court has jurisdiction over its claim because its current objections to the final indirect cost rates set by DOE in 2013 are "based on the same set of operative facts" and seek the same relief as the claim submitted to the [CO] in 2011. Pl.'s Opp. 10 (ECF No. 49). Specifically, USEC argues that it seeks exactly the same result—to be paid the final indirect rates that USEC identified in its ICSs—based upon the same set of facts and under the same legal theory in both the 2011 claim submitted to the [CO] and in USEC's amended complaint. Therefore, according to USEC, the two claims are the same under K-Con because the CO had adequate opportunity to review and act on USEC's demands before USEC filed suit in this court. USEC argues that requiring it to submit a second identical claim to the CO and await a second decision would be purposeless because USEC's hypothetical second claim for final indirect rates would be identical to its first claim, which the CO has already rejected.

In resolving the government's motion, the court begins by reviewing the allegations in USEC's 2011 claim before the CO and comparing it to the allegations

made in USEC's amended complaint. [2]   Fundamentally, as the circuit stated in K-Con, the court's task is to make sure that CDA's adjudication scheme is not undermined "by circumventing the statutory role of the [CO] to receive and pass judgment on the contractor's entire claim." Affiliated Constr. Grp., 115 Fed. Cl. at 612 (citing Cerberonics, Inc. v. United States, 13 Cl. Ct. 415, 418 (1987)).

In its 2011 claim, USEC asserted in the opening paragraph that "USEC submits a certified claim under the [CDA]. . . for payment of breach of contract damages equaling unreimbursed indirect costs allocable to a total of 20 cost-reimbursement contracts and work authorizations for services USEC provided . . . " Pl.'s Opp. Ex. A at 1.  USEC's claim further states that, "DOE's failure to establish accurate provisional rates and its failure to agree to actual indirect rates have damaged USEC in the amount of $11,217,504.  A detailed breakdown of this figure is provided in Exhibit 1." Id.  The conclusion to the claim states, "USEC is entitled to recover as breach of contract damages $11,217,504 in indirect costs it has incurred and properly invoiced under [USEC's contract], plus applicable interest under the [CDA]." Id. at 14.  In sum, the 2011 claim is a demand that the DOE set final provisional rates that match the rates in

---

[2] The court notes that the connection between disputes over setting final indirect cost rates and final cost rates was explored in SRI International, ASBCA No. 56353, 11-2 BCA, 56,353, 2011 WL 4916298 (Oct. 5, 2011).  In SRI, the Armed Services Board of Contract Appeals held that contractors are permitted to initiate CDA disputes challenging an agency's failure to issue final indirect cost rates in order to ensure that certain costs are included in a final rate determination and that any decision regarding the proper indirect rate issued in those disputes must be carried forward to the agency's final rate determination with interest.  Thus, in the context of a challenge to provisional rates, COs have the legal and factual basis for the final indirect rates sought by the contractor and the opportunity to rule on the contractor's proposed final indirect rates.

USEC's proposals, which USEC asserts are allowable costs under the FAR and its

contracts with the DOE.

As noted above, in Counts II, IV, and VI of the amended complaint, USEC is

seeking damages for DOE's alleged "failure to establish proper final indirect cost rates"

for 2003 through 2005.  Am. Compl. ¶¶ 109, 125, 140.  Count II of the amended

complaint contains the following allegations:

> 112.  On December 1, 2010, USEC submitted its revised FY 2003 ICS, as
> requested by DOE.
>
> 113.  With the exception of sludge removal costs, which USEC did not
> include in its Claims, USEC's indirect costs included in USEC's FY 2003
> ICS are allowable pursuant to FAR § 31.201-2.
>
> . . . .
>
> 117.  On December 17, 2013, while this litigation was pending before the
> Court, DOE unilaterally determined final indirect cost rates for FY 2003.
>
> 118.  The final rates that DOE determined are less than the rates identified
> in USEC's revised FY 2003 ICS.
>
> 119.  The unilaterally set rates do not allow USEC to recover all allowable
> indirect costs to which USEC is entitled under FAR § 52.216-7.
>
> . . . .
>
> 121.  USEC is entitled to judgment that DOE breached the DOE Contracts
> by failing timely to negotiate and agree to, and reimburse USEC based on,
> appropriate final FY 2003 indirect cost rates that reflect costs allowable
> under FAR Subpart 31.2 and reimbursable under FAR § 52.216-7.122.
> USEC is entitled to judgment that DOE breached the DOE Contracts by
> unilaterally setting final rates that are insufficient to permit USEC to
> recover its allowable indirect costs in accordance with FAR § 52.216-7 and
> other relevant clauses.
>
> 123.  USEC is entitled to judgment that DOE's contractual breaches have
> damaged USEC through DOE's failure to reimburse USEC for all

allowable indirect costs in accordance with FAR § 52.216-7 and other
relevant contract clauses.

Am. Compl. ¶¶ 112-123.  Counts IV and VI contain the same allegations for the 2004 and

2005 FYs, respectively.

The court finds, based on its comparison of the amended complaint and the 2011

claim, that DOE's final indirect cost rate determination in 2013 does not require

submission of a new claim to the CO.  In 2011, the CO reviewed for breach of contract

based on DOE's failure to accept USEC's indirect rate proposal and pay USEC the

indirect costs it had incurred and properly invoiced.  The 2011 claim was not asking the

DOE to set just any final rates, but rather requested the specific final rates that USEC had

identified in its ICSs and, later, in its amended complaint.  The 2011 claim thus gave the

CO the ability to pass judgment on USEC's indirect cost claim and to consider whether

DOE owed USEC the claimed amounts.  USEC's 2011 claim was for breach of contract

due to DOE's failure to set final indirect rates consistent with USEC's rate request.  The

amended complaint presents a breach of contract claim also based on DOE's failure to

accept USEC's rates when DOE issued its 2013 final rate determination.  The fact that

DOE later finalized indirect cost rates does not change the nature of the dispute between

the parties or the grounds for the dispute.[3]

---

[3] Requiring USEC to file a second identical claim would not only be a waste of time and
resources, but also would have potentially severe financial ramifications for USEC.  The CDA
provides that "[i]nterest on an amount found due a contractor on a claim shall be paid to the
contractor for the period beginning with the date the [CO receives the contractor's claim."  41
U.S.C. § 7109(a)(1).  Therefore, if USEC ultimately prevails in this litigation, it could lose the
interest that has been accruing on its 2011 claim if it is required to submit an entirely new claim.

The government argues that the amended complaint does not rely on the "same operative facts" as the 2011 CDA claim because the amended complaint discusses the final indirect rates that the agency set in 2013, which had not been set in 2011 when USEC filed its CDA claim demanding that the DOE set final indirect rates.  However, this argument is not compelled by precedent in this circuit.   In K-Con, the circuit noted that the court may go beyond the "face of the claims" to determine if the claims are essentially for the same underlying dispute.  K-Con, 778 F.3d at 1006 (citing Sharman and Scott Timber Co. v. United States, 333 F.3d 1358, 1366 (Fed. Cir. 2003)).  Here, a review of the 2011 claim demonstrates that DOE's contract officers understood that USEC was seeking payment of the indirect costs it had submitted to DOE in its ICSs and that DOE's failure to accept USEC's indirect cost request and pay USEC the amounts claimed amounted to a breach of the contracts and work authorizations at issue.  Thus, the CO had the opportunity in 2011 to accept or reject USEC's indirect rate proposal for the years in question.  USEC has not changed the final indirect costs requests.  In such circumstances, there is no reason for USEC to go back to the CO and make a new claim.

Therefore, for the reasons stated above, the government's partial motion to dismiss is **DENIED**.  The parties shall submit a joint status report with proposed next steps by **Monday, June 15, 2015.**

   **IT IS SO ORDERED.**

                                        s/Nancy B. Firestone
                                        NANCY B. FIRESTONE
                                        Judge